Gardiner, Ch. J.
The surrogate and the supreme court have determined that Mrs. Faulkner was entitled to interest upon her legacy from the time of the death of her father, the testator. As the will is silent upon the subject of in *474 terest, and as the. statute prohibits the payment of legacies until one year from the time of granting letters testamentary, and as the practice of the court, prior to the statute, allowed the same time to the executor, the decision of the courts below can only be justified by an express direction of the testator for an earlier payment, or by an implication from the provisions of the instrument, which shall be equivalent to such direction. (2 R. S., 90, § 43; 6 Vesey, 539, 540, 548; id., 415; 6 Paige, 300, 305.)
1. It is obvious from the provisions of the will, that equality of benefit and advantage to his daughters was the predominant intent of the testator, as the counsel for the respondent with justice contended. But it is also manifest that this equality was to be established by the testator, according to the dictates of his own judgment. The method by which this was to be accomplished is as clearly indicated, as the purpose itself, and in the same manner. It was not his design, that equal advantages should accrue to the respective legatees by the same means; for Mrs. Bradner received her portion in land exclusively, while that of Mrs. Faulkner consisted of land and money.
2. The whole interest of Mrs. Bradner in the estate was charged with the support and maintenance of James Grould; while less than one-half of that bestowed upon. her sister was subjected to the same burden. Again, the advances made to the legatees and their husbands constituted a part of the testator’s estate, and he expressly declares, that in establishing the equality of benefit and advantage between the legatees, and for that intent and purpose, these advances were taken into consideration and released to the recipients respectively. There is no evidence from the will or otherwise that those advances were for the same amounts, or made at the same time; a circumstance in itself highly improbable. Nor can we say how far that inequality, if it existed, influenced the other dispositions of the testator. And lastly, it was not the intention of the testator that his *475 daughters should come to the possession and enjoyment of their interest in his estate, at the same period. The right of possession to the real estate would accrue at the death of the testator; the pecuniary legacy to Mrs. Faulkner “ when it could be collected, after his decease, out of hb personal estate.” This would necessarily postpone the payment for some time after the death of the decedent; for his executors must first accept, and qualify for their office, and then collect the $16,000 out of the personal assets, before they were authorized to pay anything. The circumstances, to which allusion has been made, constrain us to adopt the will as it is written. We are not in a situation to add to or detract from its different provisions, with a view to establish a supposed equality between the beneficiaries. We are not informed what, they had received in the way of advances. For aught that appears, the excess of interest upon those made to Mrs. Faulkner and her husband might be an equivalent for the interest now claimed by the respondents. But if this court were apprized of what was known to the testator upon that subject, we could not say that in his opinion sixteen thousand dollars, at the end of a year, in cash without interest, were not an equivalent for the same nominal value in land incumbered with a life charge in favor of a third person. It may be true that the testator must be presumed to know that the profits of land and the interest on money are equivalents in law; but he also knew that those profits, as matter of fact, would depend upon the mode in which the lands happened to be cultivated at the time of his death, and upon the season of the year when that event should occur, and the right ,to them should accrue. He also knew that a year was the reasonable time fixed by law for the payment of the legacy to Mrs. Faulkner, unless he otherwise directed ; and it is fair to presume that his will was made in reference to both these principles, and in view of all the contingencies above suggested.
*476 • In addition to these considerations, we have the strong negative evidence of the intention of the testator, in his omission to provide that this legacy should draw interest from any period. He was aware that there would be an interval between his death and the receipt of this bequest by the beneficiary, should his executors comply literally with bis injunctions. The amount was large, and the interest, even for a few months, too considerable to escape the attention of a man in the habit of making investments, and realizing interest upon them, as the inventory of his estate proves to have been the case with the testator. That he, as a man of business, should make no provision for interest under these circumstances, is presumptive evidence that, in his opinion, “ the advantages to his daughters in the disposition of his property” could be and were equalized without it.
It is, however, enough for the appellants that the matter is left in doubt. They can rely upon the general rule that no interest would accrue until it became, by law, the duty of the executors to pay the legacy. The burden is upon the respondents to show a clear intent that interest should be paid from the time of the death of the testator, notwithstanding his silence and the other circumstances to which I have adverted. This they have not done. We are not authorized to speculate as to his intention, or to add to the will by mere conjecture.
The judgment of the supreme court should be reversed, but without costs in this court or the courts below, and the decree of the surrogate modified so far as it allows interest from the death of the testator.
Marvin, J., delivered an opinion to the same effect as the foregoing.
Judgment accordingly.